Electronically Filed - Taney - September 20, 2019 - 12:10 PM

# IN THE CIRCUIT COURT OF TANEY COUNTY, MISSOURI

| | | |
|---|---|---|
| IVALEE VANDERHOFF and | ) | |
| LEONARD VANDERHOFF | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. _____ |
| | ) | |
| WYNDAM VACATION RESORTS, INC. | ) | DEMAND FOR JURY TRIAL |
| Serve: | ) | |
| Registered Agent | ) | |
| Corporate Creations Network, Inc. | ) | |
| 12747 Olive Boulevard | ) | |
| Suite 300 | ) | |
| St. Louis, Missouri 63141 | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFFS' PETITION FOR DAMAGES

COME NOW the Plaintiffs, Ivalee Vanderhoff and Leonard Vanderhoff and for their causes of action against Wyndam Vacation Resorts, Inc. allege and state as follows:

## THE PARTIES

1.      The Plaintiffs Ivalee Vanderhoff and Leonard Vanderhoff (hereinafter "Vanderhoffs") are now, and were at all times material hereto, husband and wife residing in Halstead, Kansas.

2.      The Defendant Wyndam Vacation Resorts, Inc. (hereinafter "Wyndam" or "Defendant") is a Delaware corporation in good standing, authorized to do business, and doing business in the State of Missouri.

3.      Wyndam Vacation Resorts, Inc. may be served by serving its Registered Agent, Corporate Creations Network, Inc., 12747 Olive Boulevard, Suite 300, St. Louis, Missouri 63141

**EXHIBIT A**

## VENUE AND JURISDICTION

4.      This Court has jurisdiction over the parties to this case, as well as the subject matter of this lawsuit, and venue is properly placed before this Court, as all of the acts complained of occurred in Taney County, Missouri.

## GENERAL ALLEGATIONS
### The Contracts

5.      On or about November 10, 2013, the Vanderhoffs entered into a contract.  Pursuant to the terms of the first contract, the Vanderhoffs would pay for ownership points in a vacation community.

6.      On or about December 8, 2013, the Plaintiffs entered into a contract agreement with Defendant Wyndam.  Pursuant to the terms of the second contract, the Vanderhoffs would pay for ownership points in a vacation community.

7.      On or about November 10, 2014, the Plaintiffs entered into a contract agreement and installment note with Wyndam. Pursuant to the terms of the contract, the Vanderhoffs would pay the sum of $74,210.85 as and for ownership points in a vacation community. (Attached hereto and incorporated herein by this reference is Exhibit A, a true and correct copy of Contract No. 3).

8.      On or about December 13, 2014, the Vanderhoffs entered into a contract agreement and installment note with Wyndam.  Pursuant to the terms of the contract, the Vanderhoffs would pay the sum of $24,074.05 as and for ownership points in a vacation community known as Fairfield At The Meadows Condominium.   (Attached hereto and incorporated herein by this reference is  Exhibit B, a true and correct copy of Contract No. 4).

9.      On or about February 21, 2015, the Plaintiffs entered into a contract with Defendant Wyndam.   Pursuant  to  the  terms  of  the  contract,  the  Vanderhoffs  would  pay  the  sum  of

$142,131.27 as and for ownership points in a vacation community. (Attached hereto and incorporated herein by this reference is Exhibit C, a true and correct copy of Contract No. 5).

10. On or about March 17, 2015, the Vanderhoffs entered into a contract agreement with Wyndam. Pursuant to the terms of the contract, the Vanderhoffs would pay the sum of $176,954.17 as and for ownership points in a vacation community. (Attached hereto and incorporated herein by this reference is Exhibit D, a true and correct copy of Contract No. 6).

11. On or about June 12, 2015, the Plaintiffs entered into a contract agreement with Defendant Wyndam. Pursuant to the terms of the contract, the Vanderhoffs would pay the sum of $214,423.09 as and for ownership points in a vacation community. (Attached hereto and incorporated herein by this reference is Exhibit E, a true and correct copy of Contract No. 7).

12. On or about November 16, 2015, the Plaintiffs entered into a contract agreement with Defendant Wyndam. Pursuant to the terms of the contract, the Vanderhoffs would pay the sum of $242,033.94 as and for ownership points in a vacation community. (Attached hereto and incorporated herein by this reference is Exhibit F, a true and correct copy of Contract No. 8).

13. On or about December 4, 2016, the Vanderhoffs entered into a contract agreement with Defendant Wyndham. Pursuant to the terms of the contract, the Plaintiffs would pay the sum of $278,734.16 as and for ownership points in a vacation community. (Attached hereto and incorporated herein by this reference is Exhibit G, a true and correct copy of Contract No. 9).

14. Through the entering of these contracts, the Vanderhoffs incurred debt in excess of $300,000.00.

## THE REPRESENTATIONS

15. On each of the occasions when a contract was signed, a sales agent for Wyndam told the Vanderhoffs that the purchase of the points was an investment.

16.     On each of the occasions when a contract was signed, a sales agent for Wyndam told the Vanderhoffs they could rent their points and then use that money to pay their maintenance fees.

17.     On each of the occasions when a contract was signed, a sales agent for Wyndam told the Vanderhoffs their points could be rented to make additional income.

18.     On each of the occasions when a contract was signed, a sales agent for Wyndam told the Vanderhoffs they needed to purchase additional points in order to make their membership more "current" or able to use.

19.     On each of the occasions when a contract was signed, a sales agent for Wyndam told the Vanderhoffs they would be able to utilize their vacation points in order to vacation anywhere at any time.

20.     On each date of purchase, the Vanderhoffs were told this was a one-day-only deal and they had to sign that day, or they would lose that deal forever.

21.     On each of the occasions when a contract was signed, a sales agent for Wyndam would show the Vanderhoffs handwritten notes, charts, graphs and/or diagrams pertaining to the timeshare.  However, these handwritten notes, charts, graphs and/or diagrams were not provided to the Vanderhoffs.

## Contract No. 1

22.     On or about the 10th day of November, 2013, the Vanderhoffs entered into Contract No. 000201349743 with Wyndam.

23.     In the meeting on November, 2013 the Vanderhoffs were told the meeting would last one hour.  However, the meeting lasted three hours.

24.     In the meeting on November, 2013 the Vanderhoffs were told by Wyndam the purchase of the points was an investment.

25.     In the meeting on November, 2013 the Vanderhoffs were told by Wyndam the points would increase in value and could be sold at a profit.

26.     In the meeting on November, 2013 the Vanderhoffs were told by Wyndam the points could be rented to pay for maintenance fees.

27.     In the meeting on November, 2013 the Vanderhoffs were told by Wyndam the points could be rented to make additional income.

28.     In the meeting on  November, 2013 the Vanderhoffs were told by Wyndam they needed to purchase more points to make their membership current or able to use.

29.     In the meeting on  November, 2013 the Vanderhoffs were told by Wyndam they would be able to utilize their points in order to vacation anywhere at anytime.

30.     In the meeting on  November, 2013 the Vanderhoffs were told by Wyndam this was a one-day-deal and must be signed that day or the deal would be lost forever.

31.     In the meeting on November, 2013 the Vanderhoffs were told by Wyndam  they had a right to cancel the contract.

32.     In the meeting on November, 2013 the Vanderhoffs were given descriptions of the closing documents by Wyndam.  However, they were not provided a copy of those documents at that time.

33.     In the meeting on November, 2013 the Vanderhoffs were told by Wyndam their sales agent would be their personal representative to answer questions and to help them rent the timeshare points in the future.

34.     In the meeting on November, 2013 the Vanderhoffs were told by Wyndam's sales agent the Vanderhoffs would receive credits or discounts for referring new people to purchase points.

35.     The Vanderhoffs did, in fact, refer people to Wyndam.

36.     Despite being told they would receive discounts or other consideration, the Vanderhoffs did not receive anything for their referrals.

37.     On November, 2013 the Vanderhoffs were shown handwritten notes, charts, graphs and other diagrams pertaining to the timeshare, however, these notes, charts, graphs and diagrams were never provided to the Plaintiffs.


**<u>Contract No. 2</u>**

38.     On or about the 8th of December, 2013, the Vanderhoffs entered into Contract No. 000201354495 with Wyndam.

39.     In the meeting on December 8, 2013 the Vanderhoffs were told the meeting would last one hour.  However, the meeting lasted three hours.

40.     In the meeting on December 8, 2013 the Vanderhoffs were told by Wyndam the purchase of the points was an investment.

41.     In the meeting on December 8, 2013 the Vanderhoffs were told by Wyndam the points would increase in value and could be sold at a profit.

42.     In the meeting on December 8, 2013 the Vanderhoffs were told by Wyndam the points could be rented to pay for maintenance fees.

43.     In the meeting on December 8, 2013 the Vanderhoffs were told by Wyndam the points could be rented to make additional income.

44.     In the meeting on December 8, 2013 the Vanderhoffs were told by Wyndam they needed to purchase more points to make their membership current or able to use.

45.     In the meeting on December 8, 2013 the Vanderhoffs were told by Wyndam they would be able to utilize their points in order to vacation anywhere at any time.

46.     In the meeting on December 8, 2013 the Vanderhoffs were told by Wyndam this was a one-day-deal and must be signed that day or the deal would be lost forever.

47.     In the meeting on December 8, 2013 the Vanderhoffs were told by Wyndam  they had a right to cancel the contract.

48.     In the meeting on December 8, 2013 the Vanderhoffs were given descriptions of the closing documents by Wyndam.  However, they were not provided a copy of those documents at that time.

49.     In the meeting on December 8, 2013 the Vanderhoffs were told by Wyndam their sales agent would be their personal representative to answer questions and to help them rent the timeshare points in the future.

50.     In the meeting on December 8, 2013 the Vanderhoffs were told by Wyndam's sales agent the Vanderhoffs would receive credits or discounts for referring new people to purchase points.

51.     The Vanderhoffs did, in fact, refer people to Wyndam.

52.     Despite being told they would receive discounts or other consideration, the Vanderhoffs did not receive anything for their referrals.

53.     On December 8, 2013 the Vanderhoffs were shown handwritten notes, charts, graphs and other diagrams pertaining to the timeshare, however, these notes, charts, graphs and diagrams were never provided to the Plaintiffs.

## Contract No. 3

54.     On or about the 10th day of November, 2014 the Vanderhoffs entered into Contract No. 000201444304 with Wyndam.

55.     In the meeting on November 10, 2014 the Vanderhoffs were told the meeting would last one hour.  However, the meeting lasted four hours.

56.     In the meeting on November 10, 2014 the Vanderhoffs were told by Wyndam the purchase of the points was an investment.

57.     In the meeting on November 10, 2014 the Vanderhoffs were told by Wyndam the points would increase in value and could be sold at a profit.

58.     In the meeting on November 10, 2014 the Vanderhoffs were told by Wyndam the points could be rented to pay for maintenance fees.

59.     In the meeting on November 10, 2014 the Vanderhoffs were told by Wyndam the points could be rented to make additional income.

60.     In the meeting on November 10, 2014 the Vanderhoffs were told by Wyndam they needed to purchase more points to make their membership current or able to use.

61.     In the meeting on November 10, 2014 the Vanderhoffs were told by Wyndam they would be able to utilize their points in order to vacation anywhere at anytime.

62.     In the meeting on November 10, 2014 the Vanderhoffs were told by Wyndam this was a one-day-deal and must be signed that day or the deal would be lost forever.

63.     In the meeting on November 10, 2014 the Vanderhoffs were told by Wyndam  they had a right to cancel the contract.

64.     In the meeting on November 10, 2014 the Vanderhoffs were given descriptions of the closing documents by Wyndam.  However, they were not provided a copy of those documents at that time.

65.     In the meeting on November 10, 2014 the Vanderhoffs were told by Wyndam their sales agent would be their personal representative to answer questions and to help them rent the timeshare points in the future.

66.     In the meeting on November 10, 2014 the Vanderhoffs were told by Wyndam's sales agent the Vanderhoffs would receive credits or discounts for referring new people to purchase points.

67.     The Vanderhoffs did, in fact, refer people to Wyndam.

68.     Despite being told they would receive discounts or other consideration, the Vanderhoffs did not receive anything for their referrals.

69.     On November 10, 2014 the Vanderhoffs were shown handwritten notes, charts, graphs and other diagrams pertaining to the timeshare, however, these notes, charts, graphs and diagrams were never provided to the Plaintiffs.

## Contract No. 4

70.     On or about the 13th day of December, 2014 the Vanderhoffs entered into Contract No. 000201449477 with Wyndam.

71.     In the meeting on December 13, 2014 the Vanderhoffs were told the meeting would last one hour.  However, the meeting lasted three hours.

72.     In the meeting on December 13, 2014 the Vanderhoffs were told by Wyndam the purchase of the points was an investment.

73.     In the meeting on December 13, 2014 the Vanderhoffs were told by Wyndam the points would increase in value and could be sold at a profit.

74.     In the meeting on December 13, 2014 the Vanderhoffs were told by Wyndam the points could be rented to pay for maintenance fees.

75.     In the meeting on December 13, 2014 the Vanderhoffs were told by Wyndam the points could be rented to make additional income.

76.     In the meeting on December 13, 2014 the Vanderhoffs were told by Wyndam they needed to purchase more points to make their membership current or able to use.

77.     In the meeting on December 13, 2014 the Vanderhoffs were told by Wyndam they would be able to utilize their points in order to vacation anywhere at any time.

78.     In the meeting on December 13, 2014 the Vanderhoffs were told by Wyndam this was a one-day-deal and must be signed that day or the deal would be lost forever.

79.     In the meeting on December 13, 2014 the Vanderhoffs were told by Wyndam  they had a right to cancel the contract.

80.     In the meeting on December 13, 2014 the Vanderhoffs were given descriptions of the closing documents by Wyndam.  However, they were not provided a copy of those documents at that time.

81.     In the meeting on December 13, 2014 the Vanderhoffs were told by Wyndam their sales agent would be their personal representative to answer questions and to help them rent the timeshare points in the future.

82.     In the meeting on December 13, 2014 the Vanderhoffs were told by Wyndam's sales agent the Vanderhoffs would receive credits or discounts for referring new people to purchase points.

83.     The Vanderhoffs did, in fact, refer people to Wyndam.

84.     Despite being told they would receive discounts or other consideration, the Vanderhoffs did not receive anything for their referrals.

85.     On December 13, 2014 the Vanderhoffs were shown handwritten notes, charts, graphs and other diagrams pertaining to the timeshare, however, these notes, charts, graphs and diagrams were never provided to the Plaintiffs.

## Contract No. 5

86.     On or about the 21st day of February, 2015 the Vanderhoffs entered into Contract No. 000681503058 with Wyndam.

87.     In the meeting on February 21, 2015 the Vanderhoffs were told the meeting would last one hour.  However, the meeting lasted two hours.

88.     In the meeting on February 21, 2015 the Vanderhoffs were told by Wyndam the purchase of the points was an investment.

89.     In the meeting on February 21, 2015 the Vanderhoffs were told by Wyndam the points would increase in value and could be sold at a profit.

90.     In the meeting on February 21, 2015 the Vanderhoffs were told by Wyndam the points could be rented to pay for maintenance fees.

91.     In the meeting on February 21, 2015 the Vanderhoffs were told by Wyndam the points could be rented to make additional income.

92.     In the meeting on February 21, 2015 the Vanderhoffs were told by Wyndam they needed to purchase more points to make their membership current or able to use.

93.     In the meeting on February 21, 2015 the Vanderhoffs were told by Wyndam they would be able to utilize their points in order to vacation anywhere at any time.

94.     In the meeting on February 21, 2015 the Vanderhoffs were told by Wyndam this was a one-day-deal and must be signed that day or the deal would be lost forever.

95.     In the meeting on February 21, 2015 the Vanderhoffs were told by Wyndam they had a right to cancel the contract.

96.     In the meeting on February 21, 2015 the Vanderhoffs were given descriptions of the closing documents by Wyndam.  However, they were not provided a copy of those documents at that time.

97.     In the meeting on February 21, 2015 the Vanderhoffs were told by Wyndam their sales agent would be their personal representative to answer questions and to help them rent the timeshare points in the future.

98.     In the meeting on February 21, 2015 the Vanderhoffs were told by Wyndam's sales agent the Vanderhoffs would receive credits or discounts for referring new people to purchase points.

99.     The Vanderhoffs did, in fact, refer people to Wyndam.

100.    Despite being told they would receive discounts or other consideration, the Vanderhoffs did not receive anything for their referrals.

101.    On February 21, 2015 the Vanderhoffs were shown handwritten notes, charts, graphs and other diagrams pertaining to the timeshare, however, these notes, charts, graphs and diagrams were never provided to the Plaintiffs.

## Contract No. 6

102.    On or about the 17th day of March, 2015 the Vanderhoffs entered into Contract No. 000641514641 with Wyndam.

103.    In the meeting on March 17, 2015 the Vanderhoffs were told the meeting would last one hour.  However, the meeting lasted more than three hours.

104.    In the meeting on March 17, 2015 the Vanderhoffs were told by Wyndam the purchase of the points was an investment.

105.    In the meeting on March 17, 2015 the Vanderhoffs were told by Wyndam the points would increase in value and could be sold at a profit.

106.    In the meeting on March 17, 2015 the Vanderhoffs were told by Wyndam the points could be rented to pay for maintenance fees.

107.    In the meeting on March 17, 2015 the Vanderhoffs were told by Wyndam the points could be rented to make additional income.

108.    In the meeting on March 17, 2015 the Vanderhoffs were told by Wyndam they needed to purchase more points to make their membership current or able to use.

109.    In the meeting on March 17, 2015 the Vanderhoffs were told by Wyndam they would be able to utilize their points in order to vacation anywhere at any time.

110.    In the meeting on March 17, 2015 the Vanderhoffs were told by Wyndam this was a one-day-deal and must be signed that day or the deal would be lost forever.

111.    In the meeting on March 17, 2015 the Vanderhoffs were told by Wyndam  they had a right to cancel the contract.

112.    In the meeting on March 17, 2015 the Vanderhoffs were given descriptions of the closing documents by Wyndam.  However, they were not provided a copy of those documents at that time.

113.    In the meeting on March 17, 2015 the Vanderhoffs were told by Wyndam their sales agent would be their personal representative to answer questions and to help them rent the timeshare points in the future.

114.    In the meeting on March 17, 2015 the Vanderhoffs were told by Wyndam's sales agent the Vanderhoffs would receive credits or discounts for referring new people to purchase points.

115.    The Vanderhoffs did, in fact, refer people to Wyndam.

116.    Despite being told they would receive discounts or other consideration, the Vanderhoffs did not receive anything for their referrals.

117.    On March 17, 2015 the Vanderhoffs were shown handwritten notes, charts, graphs and other diagrams pertaining to the timeshare, however, these notes, charts, graphs and diagrams were never provided to the Plaintiffs.

### Contract No. 7

118.    On or about the 13th day of June, 2015 the Vanderhoffs entered into Contract No. 000201514411 with Wyndam.

119.    In the meeting on June 12, 2015 the Vanderhoffs were told the meeting would last one hour.  However, the meeting lasted more than four hours.

120.    In the meeting on June 12, 2015 the Vanderhoffs were told by Wyndam the purchase of the points was an investment.

121.    In the meeting on June 12, 2015 the Vanderhoffs were told by Wyndam the points would increase in value and could be sold at a profit.

122.    In the meeting on June 12, 2015 the Vanderhoffs were told by Wyndam the points could be rented to pay for maintenance fees.

Electronically Filed - Taney - September 20, 2019 - 12:10 PM

123.    In the meeting on June 12, 2015 the Vanderhoffs were told by Wyndam the points could be rented to make additional income.

124.    In the meeting on June 12, 2015 the Vanderhoffs were told by Wyndam they needed to purchase more points to make their membership current or able to use.

125.    In the meeting on June 12, 2015 the Vanderhoffs were told by Wyndam they would be able to utilize their points in order to vacation anywhere at anytime.

126.    In the meeting on June 12, 2015 the Vanderhoffs were told by Wyndam this was a one-day-deal and must be signed that day or the deal would be lost forever.

127.    In the meeting on June 12, 2015 the Vanderhoffs were told by Wyndam  they had a right to cancel the contract.

128.    In the meeting on June 12, 2015 the Vanderhoffs were given descriptions of the closing documents by Wyndam.  However, they were not provided a copy of those documents at that time.

129.    In the meeting on June 12, 2015 the Vanderhoffs were told by Wyndam their sales agent would be their personal representative to answer questions and to help them rent the timeshare points in the future.

130.    In the meeting on June 12, 2015 the Vanderhoffs were told by Wyndam's sales agent the Vanderhoffs would receive credits or discounts for referring new people to purchase points.

131.    The Vanderhoffs did, in fact, refer people to Wyndam.

132.    Despite being told they would receive discounts or other consideration, the Vanderhoffs did not receive anything for their referrals.

133.    On June 12, 2015 the Vanderhoffs were shown handwritten notes, charts, graphs and other diagrams pertaining to the timeshare, however, these notes, charts, graphs and diagrams were never provided to the Plaintiffs.

<u>**Contract No. 8**</u>

134.    On or about the 16th day of November, 2015 the Vanderhoffs entered into Contract No. 000201540267 with Wyndam.

135.    In the meeting on November 16, 2015 the Vanderhoffs were told the meeting would last one hour.  However, the meeting lasted more than four hours.

136.    In the meeting on November 16, 2015  the Vanderhoffs were told by Wyndam the purchase of the points was an investment.

137.    In the meeting on November 16, 2015  the Vanderhoffs were told by Wyndam the points would increase in value and could be sold at a profit.

138.    In the meeting on November 16, 2015  the Vanderhoffs were told by Wyndam the points could be rented to pay for maintenance fees.

139.    In the meeting on November 16, 2015 the Vanderhoffs were told by Wyndam the points could be rented to make additional income.

140.    In the meeting on November 16, 2015 the Vanderhoffs were told by Wyndam they needed to purchase more points to make their membership current or able to use.

141.    In the meeting on November 16, 2015 the Vanderhoffs were told by Wyndam they would be able to utilize their points in order to vacation anywhere at anytime.

142.    In the meeting on November 16, 2015 the Vanderhoffs were told by Wyndam this was a one-day-deal and must be signed that day or the deal would be lost forever.

143.    In the meeting on November 16, 2015 the Vanderhoffs were told by Wyndam they had a right to cancel the contract.

144.    In the meeting on November 16, 2015 the Vanderhoffs were given descriptions of the closing documents by Wyndam.  However, they were not provided a copy of those documents at that time.

145.    In the meeting on November 16, 2015 the Vanderhoffs were told by Wyndam their sales agent would be their personal representative to answer questions and to help them rent the timeshare points in the future.

146.    In the meeting on November 16, 2015 the Vanderhoffs were told by Wyndam's sales agent the Vanderhoffs would receive credits or discounts for referring new people to purchase points.

147.    The Vanderhoffs did, in fact, refer people to Wyndam.

148.    Despite being told they would receive discounts or other consideration, the Vanderhoffs did not receive anything for their referrals.

149.    On November 16, 2015 the Vanderhoffs were shown handwritten notes, charts, graphs and other diagrams pertaining to the timeshare, however, these notes, charts, graphs and diagrams were never provided to the Plaintiffs.

<u>**Contract No. 9**</u>

150.    On or about the 4th day of December, 2016 the Vanderhoffs entered into Contract No. 00020-1650140 with Wyndam.

151.    In the meeting on December 4, 2016 the Vanderhoffs were told the meeting would last one hour.  However, the meeting lasted between four and five hours.

152.   In the meeting on December 4, 2016 the Vanderhoffs were told by Wyndam the purchase of the points was an investment.

153.   In the meeting on December 4, 2016 the Vanderhoffs were told by Wyndam the points would increase in value and could be sold at a profit.

154.   In the meeting on December 4, 2016 the Vanderhoffs were told by Wyndam the points could be rented to pay for maintenance fees.

155.   In the meeting on December 4, 2016 the Vanderhoffs were told by Wyndam the points could be rented to make additional income.

156.   In the meeting on December 4, 2016 the Vanderhoffs were told by Wyndam they needed to purchase more points to make their membership current or able to use.

157.   In the meeting on December 4, 2016 the Vanderhoffs were told by Wyndam they would be able to utilize their points in order to vacation anywhere at anytime.

158.   In the meeting on December 4, 2016 the Vanderhoffs were told by Wyndam this was a one-day-deal and must be signed that day or the deal would be lost forever.

159.   In the meeting on December 4, 2016 the Vanderhoffs were told by Wyndam  they had a right to cancel the contract.

160.   In the meeting on December 4, 2016 the Vanderhoffs were given descriptions of the closing documents by Wyndam.  However, they were not provided a copy of those documents at that time.

161.   In the meeting on December 4, 2016 the Vanderhoffs were told by Wyndam their sales agent would be their personal representative to answer questions and to help them rent the timeshare points in the future.

162.    In the meeting on December 4, 2016 the Vanderhoffs were told by Wyndam's sales agent the Vanderhoffs would receive credits or discounts for referring new people to purchase points.

163.    The Vanderhoffs did, in fact, refer people to Wyndam.

164.    Despite being told they would receive discounts or other consideration, the Vanderhoffs did not receive anything for their referrals.

165.    On December 4, 2016 the Vanderhoffs were shown handwritten notes, charts, graphs and other diagrams pertaining to the timeshare, however, these notes, charts, graphs and diagrams were never provided to the Plaintiffs.

166.    With each of the successive contracts, the Vanderhoffs were told they needed to purchase additional points to "clean up what someone else at Wyndam failed to do."

167.    The Vanderhoffs purchased the timeshare points for personal, family or household use.

## COUNT I – FRAUD

COME NOW the Plaintiffs Ivalee Vanderhoff and Leonard Vanderhoff and for Count I of their Petition against Wyndam Vacation Resorts, Inc. allege and state as follows:

168.    Plaintiffs adopt and incorporate each and every allegation of Paragraphs 1 through 134 above, as though set forth in full herein.

169.    Plaintiffs suffered general and special damages proximately caused by the fraudulent conduct of Wyndam as alleged in this Petition.

170.    The actions and omissions of Wyndam Vacation Resorts, Inc. as alleged concerning the terms and conditions of the contracts were made with the intent to defraud the Vanderhoffs.

171.    Wyndam made the representations with the intent that the Vanderhoffs would rely upon those representations in deciding whether to buy the timeshares.

172.    The representations were material to the purchase of the timeshares.

173.    The representations were false.

174.    Wyndam failed to use ordinary care in making such representations.

175.    The Vanderhoffs relied upon the representations in making their decisions to enter the contracts and such reliance was reasonable.

176.    As a direct and proximate result of such representations, the Vanderhoffs sustained general and special damages.

177.    Wyndam has a pattern and practice of misrepresenting or concealing the true nature of their contracts that their customers were signing.

178.    The conduct of Wyndam was willful, wanton and malicious, done with reckless or conscious disregard for Plaintiffs' rights, was outrageous because of evil motive or reckless disregard for Plaintiffs' rights and the rights of others, and was done without just cause or excuse and Plaintiffs are therefore entitled to an award of punitive damages to punish this Defendant and to deter this Defendant and others similarly situated from engaging in similar conduct in the future.

WHEREFORE Plaintiffs Ivalee Vanderhoff and Leonard Vanderhoff demand judgment for actual damages against Wyndam Vacation Resorts, Inc. in an amount that is fair and reasonable in excess of $25,000, for the cost of this action, for a judgment of punitive damages against Wyndam Vacation Resorts, Inc., and for such other and further relief as the Court deems just and equitable in the premises.

<u>**COUNT II – VIOLATIONS OF THE MISSOURI MERCHANDISING PRACTICES ACT, RSMo. §407.020**</u>

COME NOW the Plaintiffs and for Count II of their Petition, allege and state as follows:

179. Plaintiffs adopt and incorporate each and every allegation of Paragraphs 1 through 145 above as though set forth in full herein.

180. Wyndam's conduct during the course of their business both before, during and after the sale as alleged constitute a violation of RSMo. §407.020 and Attorney General Regulations 15CSR 60-7.010 through 15CSR 60-9.110, having the force of law, particularly including, but not limited to:

(a)  In the multiple meetings the Vanderhoffs attended regarding each of these contracts, they were told the meeting would last one hour. However, all the meetings lasted two hours or longer.

(b)  In the multiple meetings the Vanderhoffs attended regarding each of these contracts, they were told by Wyndam the purchase of the points was an investment.

(c)  In the multiple meetings the Vanderhoffs attended regarding each of these contracts, they were told by Wyndam the points would increase in value and could be sold at a profit.

(d)  In the multiple meetings the Vanderhoffs attended regarding each of these contracts, they were told by Wyndam the points could be rented to pay for maintenance fees.

(e)  In the multiple meetings the Vanderhoffs attended regarding each of these contracts, they were told by Wyndam the points could be rented to make additional income.

(f)  In the multiple meetings the Vanderhoffs attended regarding each of these contracts, they were told by Wyndam they needed to purchase more points to make their membership current or able to use.

(g)  In the multiple meetings the Vanderhoffs attended regarding each of these contracts, they were told by Wyndam they would be able to utilize their points in order to vacation anywhere at anytime.

(h)  In the multiple meetings the Vanderhoffs attended regarding each of these contracts, they were told by Wyndam this was a one-day-deal and must be signed that day or the deal would be lost forever.

(i)  In the multiple meetings the Vanderhoffs attended regarding each of these contracts, they were told by Wyndam they had a right to cancel the contract.

(j)     In the multiple meetings the Vanderhoffs attended regarding each of these contracts, they were given descriptions of the closing documents by Wyndam. However, they were not provided a copy of those documents at that time.

(k)     In the multiple meetings the Vanderhoffs attended regarding each of these contracts, they were told by Wyndam their sales agent would be their personal representative to answer questions and to help them rent the timeshare points in the future.

(l)     In the multiple meetings the Vanderhoffs attended regarding each of these contracts, they were told by Wyndam's sales agent the Vanderhoffs would receive credits or discounts for referring new people to purchase points.

(m)    The Vanderhoffs did, in fact, refer people to Wyndam.

(n)     Despite being told they would receive discounts or other consideration, the Vanderhoffs did not receive anything for their referrals for any of the contracts.

(o)     In the multiple meetings the Vanderhoffs attended regarding each of these contracts, they were shown handwritten notes, charts, graphs and other diagrams pertaining to the timeshare, however, these notes, charts, graphs and diagrams were never provided to the Plaintiffs for any of the contracts.

181.    As a proximate result of the breaches of §407.020 Plaintiffs have suffered general and special damages as alleged in this Petition.

182.    The conduct of Wyndam was willful, wanton and malicious, done with reckless or conscious disregard for Plaintiffs' rights, was outrageous because of evil motive or reckless disregard for Plaintiffs' rights and the rights of others and was done without just cause or excuse and Plaintiffs' are therefore entitled to an award of punitive damages to punish this Defendant and to deter this Defendant and others similarly situated from engaging in similar conduct in the future.

183.    Pursuant to §407.025, Plaintiffs are entitled to recover their actual damages, punitive damages, and attorneys' fees for Wyndam's violations of §407.020.

WHEREFORE, the Plaintiffs demand judgment for their actual damages in an amount in excess of $25,000 against Wyndam Vacation Resorts, Inc., for the cost of this action, for

reasonable attorneys' fees, for a judgment for punitive damages against Wyndam Vacation Resorts, Inc. and for such other and further relief as the Court deems just and equitable in the premises.

## COUNT III -- NEGLIGENCE MISREPRESENTATION

COMES NOW the Plaintiffs and for Count III of their Petition for Damages, allege and state as follows:

184. Plaintiffs adopt and incorporate each and every allegation in Paragraphs 1 through 150 above as though set forth in full herein.

185. The conduct, omissions, concealment and actions of Wyndam constitute negligence misrepresentation.

186. Wyndam made their misrepresentation with the intent that the Vanderhoffs would rely upon those representations in deciding whether or not to make the purchases.

187. The representations were material to the purchases.

188. The representations were false.

189. Wyndam failed to use ordinary care in making such representations, and such representations were made by Wyndam without knowledge as to whether they were true or not.

190. The Vanderhoffs relied upon the representations in making their decision to enter the contracts and such reliance was reasonable.

191. As a direct and proximate result of such representations, the Vanderhoffs have sustained both general and special damages.

192. Wyndam had a pattern and practice of misrepresenting or concealing the true nature of their contracts that their customers were signing.

193. This conduct of Wyndam was willful, wanton and malicious, done with reckless or conscious disregard for the Plaintiffs' rights, was outrageous because of evil motive or reckless disregard for Plaintiffs' rights and the rights of others, and was done without just cause or excuse and the Vanderhoffs are therefore entitled to an award of punitive damages to punish this Defendant and to deter this Defendant and others similarly situated from engaging in similar conduct in the future.

194. Plaintiffs made down payments to Wyndham for several of the contracts while the contracts were being signed.

WHEREFORE, Plaintiffs Ivalee Vanderhoff and Leonard Vanderhoff demand judgment for actual damages in an amount in excess of $25,000 against Wyndam Vacation Resorts, Inc., for the costs of this action, for judgment for punitive damages, and for such other and further relief as the Court deems just and equitable in the premises.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all issues.

Respectfully submitted by:

**THE BACKER LAW FIRM, LLC**

By:___/s/ Joseph M. Backer_____
        JOSEPH M. BACKER, MO#37550
        14801 E. 42nd Street S.
        Suite 100
        Independence, Mo 64055
        Telephone: (816) 283-8500
        Facsimile: (816) 283-8501
        jbacker@backerlaw.net

        ATTORNEY FOR PLAINTIFF

\\backer2018\shared\KC\2500 Timeshares\2500-003 Vanderhoff, Ivalee\Pleadings\2019.09.20  Plfts Petition for Damages.jb.docx



# IN THE 46TH JUDICIAL CIRCUIT, TANEY COUNTY, MISSOURI

| | |
|---|---|
| Judge or Division:<br>JEFFREY M MERRELL | **Case Number: 1946-CC00198** |
| Plaintiff/Petitioner:<br>IVALEE G VANDERHOFF ETAL | Plaintiff's/Petitioner's Attorney/Address<br>JOSEPH M. BACKER<br>14801 E. 42ND STREET SOUTH<br>SUITE 100 |
| vs. | INDEPENDANCE, MO 64055 |
| Defendant/Respondent:<br> WYNDAM VACATION RESORTS INC | Court Address:<br>266 MAIN STREET |
| Nature of Suit:<br>CC Other Tort | PO BOX 129<br>FORSYTH, MO 65653 |

(Date File Stamp)

## Summons in Civil Case

**The State of Missouri to:** **WYNDAM VACATION RESORTS INC**
              **Alias:**

**CORP CREATIONS NETWRK**
**12747 OLIVE BLVD NO 300**
**SAINT LOUIS, MO 63141**
*COURT SEAL OF*

*TANEY COUNTY*

**You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.**

    09/23/2019                          /s/ Amy Strahan,tm
_____     _____
         Date                                         Clerk

Further Information:

## Sheriff's or Server's Return

**Note to serving officer**: Summons should be returned to the court within 30 days after the date of issue.

I certify that I have served the above summons by: (check one)

☐ delivering a copy of the summons and a copy of the petition to the defendant/respondent.

☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the defendant/respondent with _____, a person of the defendant's/respondent's family over the age of 15 years who permanently resides with the defendant/respondent.

☐ (for service on a corporation) delivering a copy of the summons and a copy of the complaint to:

_____ (name) _____ (title).

☐ other: _____.

Served at _____ (address)

in _____ (County/City of St. Louis), MO, on _____ (date) at _____ (time).

_____     _____
   Printed Name of Sheriff or Server                             Signature of Sheriff or Server
**Must be sworn before a notary public if not served by an authorized officer:**

             Subscribed and sworn to before me on _____ (date).

*(Seal)*

             My commission expires: _____     _____
                                Date                                 Notary Public

| **Sheriff's Fees, if applicable** | |
|---|---|
| Summons | $_____ |
| Non Est | $_____ |
| Sheriff's Deputy Salary<br>Supplemental Surcharge | $_____10.00_____ |
| Mileage | $_____ (_____ miles @ $._____ per mile) |
| **Total** | $_____ |

A copy of the summons and a copy of the petition must be served on **each** defendant/respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

Case 6:19-cv-03390-RK Document 1-2 Filed 10/31/19 Page 25 of 27

Return
SIB
10-23

Electronically Filed - Taney - October 03, 2019 - 11:30 AM

# IN THE 46TH JUDICIAL CIRCUIT, TANEY COUNTY, MISSOURI

| Judge or Division:<br>JEFFREY M MERRELL | Case Number: 1946-CC00198 |
|---|---|
| Plaintiff/Petitioner:<br>IVALEE G VANDERHOFF ETAL | Plaintiff's/Petitioner's Attorney/Address<br>JOSEPH M. BACKER<br>14801 E. 42ND STREET SOUTH<br>SUITE 100<br>INDEPENDANCE, MO 64055 |
| Defendant/Respondent:<br>WYNDAM VACATION RESORTS INC | Court Address:<br>266 MAIN STREET<br>PO BOX 129<br>FORSYTH, MO 65653 |
| Nature of Suit:<br>CC Other Tort | (Date File Stamp) |

## Summons in Civil Case

The State of Missouri to: **WYNDAM VACATION RESORTS INC**
Alias: *by serving its registered agent:*
*Corporate Creations Network, Inc.*
*12747 Olive Blvd., Suite 300*
*St. Louis, mo. 63141*

CORP CREATIONS NETWRK
12747 OLIVE BLVD NO 300
SAINT LOUIS, MO 63141

*COURT SEAL OF*

*TANEY COUNTY*

12DEPOSe

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

| 09/23/2019 | /s/ Amy Strahan, Em |
|---|---|
| Date | Clerk |

Further Information:

RECEIVED
2019 SEP 26 PM 12:38
ST. LOUIS COUNTY
SHERIFF'S OFFICE

### Sheriff's or Server's Return

**Note to serving officer**: Summons should be returned to the court within 30 days after the date of issue.

I certify that I have served the above summons by: (check one)

☐ delivering a copy of the summons and a copy of the petition to the defendant/respondent.
☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the defendant/respondent with _____, a person of the defendant's/respondent's family over the age of 15 years who permanently resides with the defendant/respondent.
☒ (for service on a corporation) delivering a copy of the summons and a copy of the complaint to:
_____Melissa_____ (name) _____Receptionist_____ (title).
☐ other: _____

Served at _12747 Olive #300_ (address)
in _St Louis_ (County/City of St. Louis), MO, on _10/1/19_ (date) at _0910_ (time).

_Scott DePolpo_
Printed Name of Sheriff or Server

_____
Signature of Sheriff or Server

**Must be sworn before a notary public if not served by an authorized officer:**

Subscribed and sworn to before me on _____ (date).

*(Seal)*

My commission expires: _____
Date

_____
Notary Public

| Sheriff's Fees, if applicable | |
|---|---|
| Summons | $_____ |
| Non Est | $_____ |
| Sheriff's Deputy Salary Supplemental Surcharge | $___10.00___ |
| Mileage | $_____ (_____ miles @ $._____ per mile) |
| **Total** | $_____ |

A copy of the summons and a copy of the petition must be served on **each** defendant/respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

19-SMCC-9165

Electronically Filed - Taney - October 03, 2019 - 11:30 AM

*Return*
SIB
10-23

# IN THE 46TH JUDICIAL CIRCUIT, TANEY COUNTY, MISSOURI

| | |
|---|---|
| Judge or Division:<br>JEFFREY M MERRELL | Case Number: 1946-CC00198 |
| Plaintiff/Petitioner:<br>IVALEE G VANDERHOFF ETAL | Plaintiff's/Petitioner's Attorney/Address<br>JOSEPH M. BACKER<br>14801 E. 42ND STREET SOUTH<br>SUITE 100<br>INDEPENDANCE, MO  64055 |
| vs. | |
| Defendant/Respondent:<br>WYNDAM VACATION RESORTS INC | Court Address:<br>266 MAIN STREET<br>PO BOX 129<br>FORSYTH, MO  65653 |
| Nature of Suit:<br>CC Other Tort | (Date File Stamp) |

## Summons in Civil Case

| | |
|---|---|
| **The State of Missouri to:  WYNDAM VACATION RESORTS INC**<br>Alias: *by serving its registered agent:*<br>*Corporate Creations Network, Inc.*<br>*12747 Olive Blvd, Suite 300*<br>**CORP CREATIONS NETWRK**   *St. Louis, mo. 63141*<br>**12747 OLIVE BLVD NO 300**<br>**SAINT LOUIS, MO 63141**   *12DEPOSe* | |

*COURT SEAL OF* / *TANEY COUNTY*

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

| | |
|---|---|
| 09/23/2019 | /s/ Amy Strahan, Em |
| Date | Clerk |

Further Information:

### Sheriff's or Server's Return

**Note to serving officer**: Summons should be returned to the court within 30 days after the date of issue.

I certify that I have served the above summons by: (check one)

☐ delivering a copy of the summons and a copy of the petition to the defendant/respondent.

☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the defendant/respondent with _____, a person of the defendant's/respondent's family over the age of 15 years who permanently resides with the defendant/respondent.

☒ (for service on a corporation) delivering a copy of the summons and a copy of the complaint to:
_____Melissa_____ (name) _____Receptionist_____ (title).

☐ other: _____

Served at _12747 Olive #300_ (address)

in _St Louis_ (County/City of St. Louis), MO, on _10/1/19_ (date) at _0910_ (time).

_Scott DePollo_
Printed Name of Sheriff or Server  ·  Signature of Sheriff or Server

**Must be sworn before a notary public if not served by an authorized officer:**

Subscribed and sworn to before me on _____ (date).

*(Seal)*

My commission expires: _____
Date  ·  Notary Public

| Sheriff's Fees, if applicable | |
|---|---|
| Summons | $_____ |
| Non Est | $_____ |
| Sheriff's Deputy Salary Supplemental Surcharge | $   10.00 |
| Mileage | $_____ (_____ miles @ $._____ per mile) |
| **Total** | $_____ |

A copy of the summons and a copy of the petition must be served on **each** defendant/respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

DB
9-30

Case 6:19-cv-03390-RK   Document 1-2   Filed 10/31/19   Page 27 of 27

19-SMCC-9165